IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN C. LILLY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COOK COUNTY SHERIFF THOMAS DART, )<br>COOK COUNTY, CORRECTIONAL OFFICER )<br>C. JOHNSON, )<br>)<br>Defendants. )<br>) | Case No.: _____<br><br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, JOHN C. LILLY, by and through his undersigned attorneys, files this Complaint against Defendants, and in support thereof, alleges as follows:

### Introduction

1. Plaintiff sustained a severe head injury in the Cook County Jail because the system failed to provide reasonable accommodations, specifically a lower bunk bed, which was required due to Plaintiff's disabilities. Due to the Defendants deliberate indifference to Plaintiff's multiple physical and mental disabilities, Plaintiff's prior residence on Lower Wacker Drive was much more accommodating to his needs than Cook County Jail.

2. This is a civil rights action brought to redress Plaintiff's federally protected rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101

1

*et seq.*, Section 504 of the Rehabilitation act, 29 U.S.C. § 794 *et seq.*, and the Civil Rights Act, 42 U.S.C. § 1983.

## Jurisdiction and Venue

3.      This Court has jurisdiction of the action pursuant to the Civil Rights Act, 42 U.S.C. § 1983, 28 U.S.C. § 1331 and 1343(a), and the Constitution of the United States.

4.      Venue is proper under 28 U.S.C. § 1391(b) since all defendants reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

## The Parties

5.      On August 2, 2017, Plaintiff, John Charles Lilly, was homeless and living on Lower Wacker Drive in Chicago, Illinois.

6.      Defendant Thomas Dart is, and at all relevant times, was the Sheriff of Cook County. He is the final policymaker responsible for all policies and practices of the Cook County Department of Corrections ("Cook County Jail"). This matter is brought against Defendant Dart in his official capacity.

7.      Defendant Cook County is a municipal corporation duly incorporated under the laws of the State of Illinois. The County runs Cermak Health Services Facility ("Cermak" or "Cermak Hospital"), an affiliate of the Cook County Bureau of Health Services, which provides health services for detainees at Cook County Jail.

8.      Officer C. Johnson (#15954) was, at the time of this occurrence, a Cook County Correctional Officer, assigned to Division 2, Dorm 2, 3rd Floor, U-House. She engaged in the conduct complained of while on duty in the course and scope of her

2

employment with the Cook County Sheriff and acted under the color of law. Officer C. Johnson is sued in her individual capacity.

**Facts Common to All Counts**

9. On August 1, 2017, around 8:00 p.m., Chicago Police Department tactical officers observed Plaintiff sitting behind a large green electrical transformer at 55 W. Lower Wacker Drive and believed he had just finished injecting himself with drugs. Upon questioning Plaintiff and checking his identification, the officers learned that he had an active probation violation warrant. Plaintiff was arrested, his backpack containing his clothing and toiletries was inventoried, and he was transported to CPD's Central Male Lockup. Lockup initially declined to accept Plaintiff due to Plaintiff's "Psych meds + Heroin used within the last 4 hours." Mercy Hospital and Medical Center gave Plaintiff medications then cleared him to go back to CPD Central Male Lockup. After Court the morning of August 2, 2017, Plaintiff was booked into the Cook County Jail.

10. As part of the booking process, Plaintiff was screened by Cermak Hospital. During this initial medical screening, plaintiff informed Cermak that, due to severe bilateral swelling in his upper and lower extremities, he needed a bottom bunk because he could not climb up to the top bunk (U-Dorm bunks did not have ladders or stepstools to help inmates climb up). Cermak physicians acknowledged his need for a bottom bunk and informed Plaintiff he would have a permit so the correctional officers would ensure he could sleep on a bottom bunk.

11. At his initial medical screening, Cermak physicians identified he had severe swelling of his hands and feet (chronic lymphedema), groin pain, was on psych meds for schizophrenia, and was going thru severe withdrawal from heroin. Due to

3

Plaintiff's severe physical and mental health concerns, Cermak physicians identified Plaintiff's need for immediate hospitalization and, just after midnight on August 3, 2017, he was admitted to Cook County Hospital ("Stroger").

11. Although he was still experiencing life threatening effects from heroin withdrawal and still had severely swollen hands and feet, around 12:36 p.m. on August 5, 2017, Stroger discharged Plaintiff and the physicians once again confirmed that Plaintiff would have a permit to ensure he could sleep on a bottom bunk bed. Plaintiff was then transported back to Cook County Jail, but without necessary medications.

12. Upon his return to Cook County Jail, Plaintiff was assigned to Division 2, Dorm 2, 3rd Floor, U-House, a general population dorm housing around 40 pre-trial detainees. When he got to his dorm, Plaintiff noticed there were no bottom bunk beds open, so he informed the correctional officers assigned to his dorm that, due to severe swelling of his left arm and right foot, he was unable to climb up to a top bunk bed. Plaintiff also informed correctional officers that doctors at both Stroger and Cermak told him he would have a permit for a bottom bunk bed, but correctional officers informed Plaintiff he did not have a bottom bunk permit.

13. Although Cook County Correctional Officers were responsible for reviewing the computerized system for any medical alerts and for making bunk assignments. Due to policies and practices, or in the alternative the lack thereof, of Sheriff Dart and Cook County, correctional officers ignored medical alerts and bottom bunk permits previously issued to Plaintiff due to his severe and disabling medical issues.

14. Other correctional officers sympathized with Plaintiff and recognized he could not physically climb up to a top bunk bed, so they let him sleep on the floor, rather

than force him to climb up to a top bunk thereby causing an unreasonable risk of injury to a disabled inmate. Since he could not climb up to a top bunk, and since there were no inmates willing to give up a bottom bunk, Plaintiff slept on the floor every night from August 5th until about 11:00 p.m. on August 14, 2017.

15. Plaintiff filed three grievances, both before and after his injury, pursuant to Cook County Jail's official grievance procedure, but his grievances were never addressed or resolved and Plaintiff only got a lower bunk after his head injury. Defendants failed to keep any records of Plaintiff's grievances.

16. Around 11:00 p.m. on August 14, 2017, Plaintiff was sleeping in the corner when he was woken up by Correctional Officer C. Johnson's commands for every inmate to get into a bunk bed so she could take her head count.

17. Plaintiff looked for a bottom bunk, but there were none open, so he informed Officer C. Johnson that he could not climb up to a top bunk. Officer C. Johnson could have counted Plaintiff while he was sleeping on the floor, could have ordered one of the dozens of physically fit inmates out of a bottom bunk, could have offered Plaintiff her assistance in climbing up to a top bunk, or could have provided him with a stepstool. Instead, Officer C. Johnson ignored Plaintiff's complaints and told Plaintiff "every ass is in a bunk."

18. Officer C. Johnson, either knew, from observing Plaintiff stumbling around and falling down just prior to his injury, or should have known, from what Cook County's computer system told her and what co-workers would have told her, about Plaintiff's need for a bottom bunk. Nevertheless, Officer C. Johnson ignored Plaintiff's

5

complaints and continued her demands for him to get into a top bunk (since there were no open bottom bunks).

19. Plaintiff kept trying to find an open bottom bunk so that he could comply with his C.O.'s orders for every ass to get into a bunk. Video footage from U-House shows Plaintiff initially fell to the floor while walking up and down an aisle. After already falling down once while attempting to comply with Officer Johnson's demands, Plaintiff stumbled again, this time striking his head on a wooden bed rail, which knocked him unconscious and caused a laceration above his left eyebrow.

20. Due to his head injury, Plaintiff was taken in an ambulance to Saint Anthony Hospital where he was stitched up then sent back to jail. Upon his return to jail, Plaintiff was initially put on 24-hour observation. When he got sent back to U-House, all Plaintiff's personal possessions that came with him from Lower Wacker were gone. Plaintiff was informed that his property had been disposed of, pursuant to official policy and practice, since he left his personal property un-attended in U-House.

21. Upon his return from Saint Anthony's, and due to the same reasons that required him to have a lower bunk initially, Plaintiff was immediately given a lower bunk for the rest of his stay at Cook County Jail.

**Background Facts Relating to the Deliberate Indifference of the County and Sheriff**

22. The Cook County Department of Corrections houses approximately 100,000 individuals annually; many of those detainees are people with disabilities.

23. With the high number of people with disabilities housed within the Cook County Department of Corrections, both Cermak Hospital and Sheriff Dart are aware of

the need to provide necessary accommodations in housing assignments and placements of detainees with disabilities.

24. Defendant Cook County, through its Cermak Hospital, conducts medical screenings and evaluations of all detainees as they come into Cook County Jail. In the course of conducting those evaluations, its physicians often identify needed accommodations for individuals with disabilities who are entering the jail.

25. Both Cook County and the Sheriff have failed to establish adequate procedures for the County's medical staff to communicate needed accommodations for detainees with disabilities to the Sheriff's correctional staff.

26. Even where the County's medical staff does communicate the needed accommodations to the correctional staff, the Sheriff has failed to establish necessary training and procedures to insure that accommodation requests are not only received but also implemented.

27. As a direct result of those deficiencies, correctional staff routinely fail to implement necessary accommodations relating to the bunk placements of detainees with disabilities. *See, e.g.*, *Borys v. Cook County*, 1:15-cv-08972 (N.D. Ill. 2015); *Miller v. Kienlen*, 2017 WL 951342 (N.D. Ill. Mar. 10, 2017).

28. As stated above, both of these Defendants have been sued in prior actions for the failure to provide housing consistent with their obligations under the ADA. These Defendants also agreed to the entry of an Agreed Order that was required to protect the constitutional rights of the inmates at Cook County Jail. *See United States of America v. Cook County*, 10-C-2946, Agreed Order (N.D. Ill. May 13, 2010), and **EXHIBIT 1** -

7

U.S. Department of Justice, Civil Rights Division, July 11, 2008, Letter to Cook County Board President Todd Stroger and Sheriff Tomas Dart.

## COUNT 1: VIOLATION OF THE REHABILITATION ACT
**(against Defendants Dart and Cook County)**

29. Section 504 provides that "no otherwise qualified individual with a disability in the United States…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 U.S.C. § 794.

30. Section 504 requires covered entities to provide reasonable accommodations to enable qualified individuals with disabilities to participate in the program or activity.

31. Defendants Sheriff Dart and Cook County are subject to the Rehabilitation Act as entities of local government that receive federal financial assistance. 29 U.S.C. § 794(b); C.F.R. § 27.1.

32. Plaintiff is a qualified individual with a disability pursuant to Section 504 because he was substantially limited in neurological functions due to his schizophrenia and withdrawal from a severe heroin addiction. Plaintiff is also a qualified individual because his chronic lymphodema (swollen and painful arms and feet) substantially limited him in physical functions (such as climbing up to a top bunk bed without assistance) and other major life activities.

33. By failing to provide Plaintiff with the reasonable accommodation, including but not limited to (a) a lower bunk assignment, (b) a ladder to the top bunk, (c)

a stepstool, (d) assistance from a C.O., and/or (e) policies that would allow Plaintiff to continue sleeping on the floor, Defendants Cook County and Sheriff Dart discriminated against Plaintiff in violation of Section 504.

34. Defendants' conduct was intentional and deliberately indifferent to Plaintiff's federally protected rights.

35. As a result of Defendants' unlawful actions, Plaintiff suffered personal injuries that caused him pain and suffering, permanent memory problems, disfigurement (permanent scar above his left eye), past and future medical bills, and the loss of Plaintiff's personal property without procedural due process.

### COUNT II: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
**(against Defendants Dart and Cook County)**

36. Plaintiff repeats and re-alleges all of the factual allegations above and they are incorporated as if fully restated herein.

37. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

38. The ADA requires public entities to provide reasonable accommodations to qualified individuals with disabilities to enable them to benefit from the services and participate in the program or activity.

39. Plaintiff is a qualified individual with a disability pursuant to the Americans with Disabilities Act because he was substantially limited in neurological functions due to his schizophrenia and withdrawal from a severe heroin addiction.

9

Plaintiff is also a qualified individual because his chronic lymphodema (swollen and painful arms and feet) substantially limited him in physical functions (such as climbing up to a top bunk bed without assistance) and other major life activities.

40. By failing to provide Plaintiff with the reasonable accommodation of a lower bunk assignment, failing to provide him with proper medical care and treatment for his swollen limbs and heroin withdrawal, and failure to provide correctional officers with proper training to identify inmates' medical needs and required bunk accommodations, Defendants Cook County and Sheriff Dart discriminated against Plaintiff in violation of the Americans with Disabilities Act.

41. Defendants' conduct was intentional and deliberately indifferent to Plaintiff's federally protected rights. Defendant was well aware of the problems that led to Plaintiff's injury from multiple prior inmate injuries and investigations by the Office of Civil Rights. *See* **Exhibit 1**, pages 42-70.

42. As a result of Defendants' unlawful actions, Plaintiff suffered personal injuries that caused him pain and suffering, permanent memory problems, disfigurement (permanent scar above his left eye), past and future medical bills, and the loss of Plaintiff's personal property without procedural due process.

**COUNT III: VIOLATION OF DUE PROCESS (14TH AMENDMENT - § 1983)**
**(against all Defendants)**

43. Plaintiff repeats and re-alleges all of the factual allegations above and they are incorporated as if fully restated herein.

44. At the time of the occurrence, Plaintiff had serious medical needs requiring treatment and required reasonable accommodations which were known to

Defendants. Defendants were aware of the serious risk of harm presented and were deliberately indifferent to such risks.

45. The misconduct described in this Count was undertaken pursuant to the policy and practice of Sheriff Dart and Cook County in that:

(a) Sheriff Dart and Cook County manifest deliberate indifference by maintaining policies and practices that fail to adequately obtain appropriate bunk placements of Cook County pretrial detainees with disabilities, thereby encouraging and causing the very type of misconduct at issue here;

(b) The County maintains policies and practices that allow and cause medical personnel to disregard the serious needs of people with disabilities by failing to take necessary measures to ensure that correctional staff receive the necessary medical information, or requests for accommodations, for detainees with disabilities to make appropriate bunk assignments;

(c) Sheriff Dart maintains policies and practices that allow and cause correctional staff to disregard the serious needs of people with disabilities by failing to take necessary measures to ensure that correctional staff receive and implement the necessary requests for accommodations relating to bunk assignments for detainees with disabilities;

(d) Sheriff Dart and Cook County knowingly maintain policies and practices that allow disabled detainees to be given bunk assignments without consideration of their need for accommodations;

11

(e) Sheriff Dart and Cook County policymakers are aware of, condone, and facilitate by their inaction, the policies and practices that caused the misconduct at issue in this case; and

(e) Sheriff Dart and Cook County manifest deliberate indifference by maintaining policies and practices that fail to provide inmates with procedural due process prior to disposing their personal belongings (*e.g.* no notice or opportunity to be heard while inmates are at the hospital due to acute injuries suffered in jail).

46. The above described conduct was intentional, and Defendants acted with malice and deliberate indifference to Plaintiff's federally protected rights, including his rights to due process as protected by the Fourteenth Amendment.

47. As a result of Defendants' unlawful actions, Plaintiff suffered personal injuries that caused him pain and suffering, permanent memory problems, disfigurement (permanent scar above his left eye), past and future medical bills, and the loss of Plaintiff's personal property without procedural due process.

WHEREFORE, Plaintiff demands judgment against all Defendants for compensatory and punitive damages, plus the costs of this action and attorney's fees, and such other and additional relief as this Court deems fair and just.

PLAINTIFF DEMANDS TRIAL BY JURY

Respectfully submitted,

BY: /S/ JOHN G. COVERT – 6285969
      One of his attorneys

JOHN GALT COVERT
U.S. District Court for the Northern District of Illinois - Bar #6285969IL
The Llorens Law Group, Ltd.
20 N. Clark St., 33rd Floor
Chicago, Illinois 60602
(312) 602-2747
j.covert@llorenslawgroup.com